UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shiv P. Singh, Walter O. Singh,                              Civil No. 04-1595 JRT/FLN
(JRT/FLN)
Tramayne Talbot, Trinity Talbot,
Tamaria Talbot
                    Plaintiffs,

            v.                                               **REPORT AND**
                                                             **RECOMMENDATION**

The City of Minneapolis, Sgt. Yellowbird
Officer Liljerberg, Officer Casper,
Officer Heyda, Officer Persoon, Officer Awalt,
acting in their individual capacities as Minneapolis
police officers, and John Doe and Richard Roe,
unknown officers acting in their individual
capacities as Minneapolis police officers,

            Defendants.

_____

Pro Se Plaintiffs.
Charles J. Brown for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on December

9, 2005, on Defendants' Motion for Summary Judgment [#57].  The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons that follow, this Court recommends that Defendants' Motion be granted.

## I.    BACKGROUND

Plaintiffs filed their initial complaint on April 15, 2004.  Plaintiffs filed an amended

complaint on June 24, 2004, and filed a document titled "Fourth Amended Complaint" on October

15, 2004.  Plaintiffs' claims are based on a series of events that occurred from several ongoing

domestic family disputes among the Singh family and the Hanuman family.  Mr. Shiv P. Singh and

Ms. Indrani Hanuman are siblings.

In their complaint Plaintiffs allege that a series of events occurred between Plaintiffs and Minneapolis Police Officers that give rise to the present suit.  Plaintiffs allege that on March 8, 2001, Walter Singh brought a civil action against his sister, Indrani Hanuman, and that she attacked Shiv Singh later that day for assisting his brother in filing the civil suit.  (Compl. at 8.)  Plaintiffs allege that later that day Shiv Singh was arrested by Minneapolis police and was not told the reason for his arrest.  (Compl. at 8.)  Plaintiffs further allege that when Shiv Singh was arrested the arresting officer took Shiv Singh's keys to his residence and gave them to Indrani.  (Compl. at 8.)  Plaintiffs further allege that, as a result of giving the keys to Indrani, items were stolen from the Singh residence.  (Compl. at 8.)

Plaintiffs allege that on September 2, 2002,  Plaintiff Shiv Singh came home from work to find that both his car and his brother Plaintiff Walter Singh's car had been vandalized.  (Compl. at 7.)  Plaintiffs allege that they called the Mineapolis police and that, after an hour and a second phone call to dispatch, two officers arrived on the scene.  (Compl. at 7.)  Plaintiffs allege that Shiv, Walter and Walter's children waited outside for the police to arrive.  (Compl. at 7.)  Plaintiffs allege that two female officers stopped and immediately exited their vehicles with guns drawn and pointed at Shiv and Walter's heads.  (Compl. at 7.)  Plaintiffs allege that the officers started to scream "where are the guns" and proceeded to throw Shiv and Walter up against the police car.  (Compl. at 7.)  Plaintiffs allege that Walter was released but that Shiv was taken to the Hennepin County Jail and released two days later.  (Compl. at 7.)

Another event alleged by Plaintiffs took place on September 6, 2003, at approximately 11:30 p.m.  (Compl. at 4.)   Two police officers knocked on the door of Plaintiff Shiv Singh's home,

2

demanding that Plaintiff Walter Singh come out of the house "with his hand up." (Compl. at 4.) Plaintiff Shiv Shing alleges that he was asleep at the time and that Plaintiffs Trinity and Tremayne Talbot were in the house as well. (Compl. at 4.) Plaintiffs allege that Shiv Singh unlocked the door and immediately Officer Liljerberg and Officer Persoon kicked in the door. (Compl. at 4.) Plaintiffs alleged that the door struck Shiv Singh in the head and knocked him to the ground, and that this blow resulted in the loss of and damage to his teeth, back and arms. (Compl. at 4-5.) Plaintiffs allege that the officers entered the premises with their guns drawn, and proceeded to search the residence for Plaintiff Walter Singh. (Compl. at 5.) Plaintiffs allege that the officers struck Plaintiff Shiv Singh and kicked him while he was handcuffed on the ground in his home. (Compl. at 5.) Plaintiffs allege that one of the officers grabbed Plaintiff Tremayne by the arm and forced him into the upstairs of the residence, all the while shouting for Walter Singh to come down with his hands up. (Compl. at 5.) Plaintiffs allege that after the home was searched for Walter, the officers released Shiv Singh from the handcuffs and told him to tell Walter that there was a warrant out for his arrest. (Compl. at 5.) Plaintiffs further allege that Walter Singh returned home later that evening and that he was informed when he called the police department that there was not an outstanding warrant for his arrest. (Compl. at 5.)

Plaintiffs further allege that on September 28, 2003, Walter Singh was arrested for allegedly assaulting a police horse, but that the charges were later dismissed. Based on the various events described above, Plaintiffs claim that the Defendant officers committed assault and battery, false imprisonment, invasion of privacy, violations of constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments, use of excessive force, personal injuries and deprived Plaintiffs' of their civil rights. Plaintiffs also allege a claim against the City of Minneapolis pursuant to 42 U.S.C.

§ 1983.

Defendants' now move for Summary Judgment, arguing that the Plaintiffs have failed to properly serve the individual officer Defendants, and further arguing that Plaintiffs have failed to state a cause of action against the City of Minneapolis under 42 U.S.C. § 1983. Plaintiffs argue that the City of Minneapolis accepted service for the individual Defendants, and that Plaintiffs have sufficiently stated a cause of action against the City of Minneapolis under 42 U.S.C. § 1983. For the reasons that follow, the Court recommends that Defendants' Motion for Summary Judgment be granted.

## II.   STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. Id. at 255. Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue. See Southwall Technologies, Inc. v. Cardinal IG Co., 54

4

F.3d 1570, 1575 (Fed. Cir. 1995).

### III.    LEGAL ANALYSIS

#### A.    The Individual Defendants Are Dismissed for Lack of Service

Federal Rule of Civil Procedure 4(m) states "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m).

On March 14, 2005, the Court had a hearing on Plaintiffs' Motion to Resolve Disputed Police Officers. At that hearing, Plaintiff Shiv Singh stated "I served the City. I never served any individual officers and I had no objection until now from the City of Minneapolis." (Transcript of the March 14, 2005 hearing (hereinafter "Tr.") at 9.) Although Plaintiff Shiv Singh admitted that he had not served the individual officers, Plaintiffs argue that Defendants' counsel, Mr. Brown, admitted at the March 14, 2005, hearing that the City of Minneapolis had accepted service on behalf of the individual police officers. In support of this argument, Plaintiffs point to Mr. Brown's statements at the March 14, 2005, hearing.

At the hearing on March 14, 2005, when asked whether the City accepted service for the named individual defendants, Mr. Brown replied "Of course for the ones that were named they were named and, therefore, under Minnesota Statute 466, [the City of Minneapolis] agreed to indemnify those named officers. That's the normal procedure. Those individuals that were named are the ones who are indemnified upon approval by the City Attorneys' Office." (Tr. at 9-10.) When asked by the Court "So [the individual named officers] don't need to be individually served by the plaintiff in order to become parties? You accept service by reason of the fact that they work for you?" Mr.

Brown responded:

> Often times individuals are named but sometimes they are not.  They are named and
> the City is served, and because they're named, they may, through the department,
> execute a request for indemnification under the state statute.  And then based upon
> the terms and whether their situation complies with the requirements of the statute,
> we would then decide whether we will indemnify them.  In this particular instance
> we agreed to indemnify all of the named officers who were in the original complaint
> and the complaint as amended.

(Tr. at 10.)  When further asked by the Court "So as to the folks who are named in . . . the complaint,

the amended complaint, your position is they are parties to the lawsuit, you do represent them, they

have answered, and the case is pending as to them?" Mr. Brown responded "Yes."  (Tr. at 10-11.)

Plaintiffs argue that this exchange amounts to an admission by Mr. Brown that the City has

accepted service of the summons and complaint on behalf of the individual Defendant officers.

However, at oral argument on this motion, Mr. Brown clarified his earlier comments, stating that

in the exchange quoted above he was discussing the issues of indemnification and representation,

which are separate issues from the issue of acceptance of service.  In their answer, the City stated

that "Service of Process on the individual Defendants is inadequate."  (Answer at 5.)

In the present case the City of Minneapolis did not accept service for the individual

Defendant officers in this case.  In order for the City to even be permitted to accept service on behalf

of the individual Defendant officers, each individual Defendant would have had to authorize the City

to accept service of the summons and complaint on their individual behalf.  The individual

Defendants never authorized the City to accept service on their behalf; therefore, Plaintiffs never

properly served the individual Defendant officers as required by Federal Rule of Civil Procedure

4(m).

Plaintiffs' complaint was filed on April 15, 2004.  The document Plaintiffs titled their Fourth

Amended Complaint was filed on October 15, 2004. More than 120 days has elapsed since Plaintiffs filed their Complaint and the individual Defendant officers have not been served. Therefore, pursuant to Federal Rule of Civil Procedure Rule 4(m), the complaint must be dismissed as to the individual Defendants for lack of service of the summons and complaint.

**B.      There Is No Genuine Issue of Material Fact Regarding Plaintiffs' <u>Monell</u> Claim**

Plaintiff alleges in Count Six of the Complaint that the City is liable for the acts of the Defendant Officers because the Officers were acting pursuant to policies and customs of the City of Minneapolis that exhibited "deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel . . . of unjustified, unreasonable illegal use of force and other forms of intimidation, coercion and harassment." (Compl. at 13.) Specifically, Plaintiffs allege the City is liable because it has "maintained a custom[] and practice of inadequately and improperly investigating citizens [sic] complaints of police misconduct[] and maintained a custom and practice of deliberate indifference to citizen complaints of excessive force and failed to discipline, remediate, counsel or retrain officers who have histories of improper, abusive and intentional conduct in this regard." (Compl. at 13.) Plaintiffs further allege that "[a]s a result of the above-described policies and customs" Plaintiffs have demonstrated a "deliberate indifference on the part on the  policymakers of the City of Minneapolis." (Compl. at 13.)

A city cannot be held vicariously liable for the actions of its police officers under section 1983 on a theory of respondeat superior. <u>Monell v. Dept. of Social Servs</u>., 436 U.S. 658, 694 (1978). A city may be liable, however, for the unconstitutional acts of its officials or employees

when those acts implement or execute an unconstitutional policy or custom of the city.  <u>Johnson v.</u>

<u>Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999).  That is, a section 1983 claim against

a governmental entity will not stand unless action pursuant to official municipal policy caused a

constitutional tort.  <u>Monell</u>, 436 U.S. at 691.  Therefore, for a municipality to be liable, a plaintiff

must prove that an official policy or custom was "the moving force [behind] the constitutional

violation."  <u>Id.</u>, at 694; <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1985) (only where the

constitutional injury is caused by the execution of city policy or custom will section 1983 liability

lie).  Here, Plaintiffs argue that the Defendant Officers acted pursuant to a City custom when they

used excessive force against Plaintiffs during several different incidents.

To establish that the City is liable because of a municipal custom, Plaintiffs must show:

> (1)  The existence of a continuing, widespread, persistent pattern of
> unconstitutional misconduct by the City's employees;
>
> (2)  Deliberate indifference to or tacit authorization of such conduct
> by the City's policymaking officials after notice to the officials of
> that misconduct; and
>
> (3) Plaintiffs were injured by acts which occurred pursuant to the
> City's custom, i.e., proof that the custom was the moving force
> behind the constitutional violation.

<u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted).  Plaintiffs argue that

the City is liable for their injuries because the City failed to train its police officers such that this

failure to train evidences a deliberate indifference to the rights of Minneapolis citizens, and that this

failure to train can be properly thought of as a city policy or custom that is actionable under 42

U.S.C. § 1983.

In the present case, Plaintiffs did not allege with specificity any facts which would support

the basis of these claims.  Plaintiffs did not issue any written discovery relevant to these allegations,

nor did Plaintiffs take the depositions of the Defendant officers, the Minneapolis Police Chief, or any other relevant City officials.  The record in this case does not indicate whether any citizen complaints were filed against the individual Defendant police officers with the Civilian Review Authority.  In Plaintiffs' memoranda addressing the present motion, Plaintiffs state that they filed a complaint against Officer Walt and Officer Wernier with the Internal Police Affairs and the Civilian Police Board and that no one ever acted on their complaint.  However, there is no evidence in the record to support this claim.  Therefore, there is no evidence in the record that the Civilian Review Authority investigations are so deficient that, as a matter of law, the deficiency caused the alleged unconstitutional behavior in the present case.  Therefore, there is no genuine issue of material fact as to the adequacy of the Civilian Review Authority Investigations or police disciplinary procedures.       Plaintiffs also have the burden of proving that the City had knowledge of prior misbehavior on the part of its officers and failed to act, and that this inaction amounts to deliberate indifference on the part of the City.  There is no evidence in the record of the City's failure to address or correct the prior misconduct or unconstitutional acts of any of the named Defendant police officers.  Therefore, there is no genuine issue of material fact as to this issue.

Even assuming that Plaintiffs could make a sufficient showing that the City's review system fails to sustain meritorious complaints of excessive force as a matter of policy, Plaintiffs cannot defeat a motion for summary judgment unless they can show a causal connection between that policy and the constitutional violation sustained.  As the Supreme Court stated:

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary

9

in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation.

City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (quotations omitted).

Plaintiffs cannot show the requisite causal connection.  Plaintiffs have not produced any expert testimony identifying any alleged deficiencies in the disciplinary or training practices of the Minneapolis Police Department as they related to the Defendant police officers.  Since Plaintiffs cannot make a sufficient showing of the deliberate indifference of the City of Minneapolis, and since Plaintiffs cannot show a causal connection between the alleged policy and the constitutional violation suffered, Defendants' summary judgment motion must be granted.

## IV.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment [#57] be **GRANTED**.

DATED: January 27, 2006                    s/ *Franklin L. Noel*
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 15, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 16, 2006** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.